[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for breach of a lease contract. The plaintiff landlord claims that the defendants had a lease from August 9, 1995 for a term of five years for premises located at the Groton Square Shopping Center. The plaintiff claims that the defendant stopped paying the rent and other charges on February 1, 1999. The defendant vacated the premises on or about June 14, 1999. CT Page 5322
The plaintiff claims that the defendant owes $11,575.00 for failure to pay the monthly rent from July 1, 1999 to November 30, 1999. It also claims rent due from December 1, 1999 through November 30, 2000 the expiration date of the lease, at $2,430.00 per month for a total of $29,160.00 for that twelve month period. The plaintiff also claims CAM charges of $2,975.00 less a credit of $341.00; real estate taxes of $4,579.63 for 17 months and promotion fund charges of $708.00 for a total of $48,657.00 through the end of the lease, plus the $11,550.71 due as of June 1, 1999. In addition it claims $32,000.00 which it paid to Cornerstone Books for tenant improvements. The plaintiff claims that this allowance was necessary to induce Cornerstone to lease the premises on October 1, 1999 through the end of the defendant's lease. However, the premises leased by Cornerstone was not only for the space formerly occupied by the defendant but for space formerly occupied by another tenant Photo Express whose lease had expired. Both the defendant's area and that of Photo Express was to be improved by the $32,000.00 allowance. However, the full amount was changed to the defendant with no allocation as to how much space was occupied by each former tenant.
The defendants argue that if the costs are not prorated between the two former tenants, the defendants should not be charged at all for the improvement allowance.
In Connecticut, "[w]hen the lessee breaches a lease for commercial property, the lessor has two options: (1) to terminate the tenancy; or (2) to refuse to accept the surrender. . . . Where the landlord elects to continue the tenancy, he may sue to recover the rent due under the terms of the lease. Under this course of action, the landlord is under no duty to mitigate damages. . . . When the landlord elects to terminate the tenancy, however, the action is one for breach of contract; . . . and, when the tenancy is terminated, the landlord is obligated to mitigate his damages. . . . When the tenancy ends, the tenant is released from his obligations under the lease and is, therefore, no longer obligated to pay rent. . . ." (Citations omitted; internal quotation marks omitted.) KR RealtyAssociates v. Gagnon, 33 Conn. App. 815, 819, 639 A.2d 524 (1994). "Where a landlord . . . elects to terminate the tenancy and to regain possession of the premises, . . . he may sue or a breach of the lease. Where the action is one for breach of the lease, basic contract principles apply." (Internal quotation marks omitted.) Id., 820; see also Rokalor, Inc. v. Connecticut Eating Enterprises, Inc.,18 Conn. App. 384, 388, 558 A.2d 265 (1989).
"A lease is nothing more than a contract. . . . Thus, as in any CT Page 5323 other contract action the measure of damage is that the award should place the injured party in the same position as he would have been in had the contract been fully performed. . . . The plaintiff [is] entitled to recover the damages which would naturally follow from such a breach." (Citations omitted; internal quotation marks omitted.) KR Realty Associates v. Gagnon, supra,33 Conn. App. 821-22; see also Torosyan v. Boehringer IngleheimPharmaceuticals, Inc., 234 Conn. 1, 32, 662 A.2d 89
(1995).
"The duty to mitigate damages [does] not require the plaintiff to sacrifice any substantial right of its own; . . . or to exalt the interests of the tenant above its own. . . . It [is, however,] required to make reasonable efforts to minimize damages." DanparAssociates v. Somerville Mills Sales Room, Inc., 182 Conn. 444, 446,438 A.2d 708 (1980). "Ordinarily, a landlord is required to attempt to re-let the premises in order to satisfy this requirement. . . . In doing so the landlord is entitled to recover from the breaching party, in addition to future rent, the reasonable costs of reletting which may include renovation and repair costs necessary for reletting. It therefore follows from this that if the landlord is to be put in the same position he would have been as well as money could do it had there been no breach, he is also entitled to recover the reasonable expenses of mitigating damages which would necessarily include costs of repairs and renovation for refitting." Heyman v.Chen, Superior Court, judicial district of Stamford/Norwalk Housing Session, Docket No. 9108-2109 (November 9, 1993, Melville, J.). "What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier." Vespoli v.Pagliarulo, 212 Conn. 1, 3, 560 A.2d 980 (1989).
In the present case, the defendant breached a lease agreement for retail commercial space in the plaintiff's building. Subsequent to the defendant's breach of the lease, the plaintiff renovated the defendant's former retail space, as well as the adjacent vacant store space, in order to lease both areas to Cornerstone. Cornerstone was already a current tenant who occupied a smaller area in the plaintiff's building. The plaintiff provided Cornerstone with $32,000.00 in order to complete the repairs and renovations of the two vacant adjacent retail spaces. Although it is undisputed that the plaintiffs spent $32,000.00 renovating the premises for Cornerstone, the plaintiff did not proffer any evidence indicating what percentage of that amount was spent renovating the location formerly occupied by the defendant. Even assuming that $32,000.00 was a reasonable and necessary expense incurred in order for the plaintiff to re-let the premises and thereby mitigate its damages, the plaintiff failed to CT Page 5324 present evidence at trial which demonstrated what portion of the $32,000.00 was attributable to the defendant's breach.
"When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Citations omitted; internal quotation marks omitted.) Gaudio v. Griffin Health Services Corp., 249 Conn. 523,554, 733 A.2d 197 (1999). "[T]here is no unbending rule as to the evidence by which such compensation is to be determined . . . damages may be based on reasonable and probable estimates. . . . [T]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." (Citations omitted; internal quotation marks omitted.) Fuessenich v. DiNardo, 195 Conn. 144, 153,487 A.2d 514 (1985).
Here, the record is devoid of any evidence relative to the issue of what portion of the $32,000.00 was used to renovate the space formerly leased by the defendant. In the absence of sufficient evidence from which the court can determine what percentage of the $32,000.00 was specifically attributable to this defendant, the court is unable to award the plaintiff any amount as damages for expenses spent in renovating the premises. Although it is true that "[a] damage theory may he based on assumptions so long as the assumptions are reasonable in light of the record evidence;" Beverly HillsConcepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48,70, 717 A.2d 724 (1998); "[a]n award of damages cannot be based upon guess, conjecture or surmise." Winsted Land Development v. DesignCollaborative Architects, Superior Court, judicial district of Litchfield, Docket No. 071571 (Aug. 12, 1999, Wiese, J.). Since there is no evidence in the record to support the plaintiff's claim for damages from the defendant for a sum certain, the court may not properly determine what portion of the $32,000.00 was attributable to the defendant's breach of lease. To do so would be mere speculation and, therefore, improper.
For the foregoing reasons, the court does not award the plaintiff $32,000.00 in reletting expenses for tenant improvements. The defendant argues that the plaintiff is entitled to only back rent, CAM charges and taxes in the amount of $9,125.71 through June 1, 1999 and $7,700.00 up until October 1, 1999 the date of the Cornerstone lease for a total of $16,825.71. They claim they owe no more.
The court finds that the defendants owe the plaintiff rent from CT Page 5325 February 1, 1999 until June 1, 1999, $11,550.71; rent from June 7, 1999 until October 11, 1999 the date of the Cornerstone lease in the amount of $11,575.00 (5 months at $2,315) CAM charges $2,633.00; taxes (5 months at $269.39) $1,346.95; promotional fund charges for 5 months at $41.67 per month, $208.35.
The court finds that the plaintiff is entitled to no more than these amounts or a total of $27,314.01.
In addition the plaintiff claims attorney's fees in the amount of $6,319.76 and costs of $696.10 for a total of $7,015.86. The plaintiff's attorney filed an affidavit and back up materials to support the same on March 15, 2000.
Accordingly, the court hereby enters judgment in the amount of $27,314.01 plus fees and costs of $7,015.86 for a total of $34,329.87.
____________________ D. Michael Hurley, Judge Trial Referee